[No. B183981. Second Dist., Div. Three. May 10, 2007.]

COUNTY OF LOS ANGELES et al., Plaintiffs and Appellants, v. COMMISSION ON STATE MANDATES, Defendant and Appellant; REGIONAL WATER QUALITY CONTROL BOARD, LOS ANGELES REGION, Real Party in Interest and Respondent.

CITY OF ARTESIA et al., Plaintiffs and Appellants, v. COMMISSION ON STATE MANDATES, Defendant and Appellant; REGIONAL WATER QUALITY CONTROL BOARD, LOS ANGELES REGION, Real Party in Interest and Respondent.

900

COUNSEL

Raymond G. Fortner, Jr., County Counsel and Judith A. Fries, Principal Deputy County Counsel, for Plaintiffs and Appellants County of Los Angeles and Los Angeles County Flood Control District.

Burhenn & Gest, Howard Gest and David Burhenn for Plaintiffs and Appellants County of Los Angeles, Los Angeles County Flood Control District and Cities of Commerce, Carson, Downey, Hawaiian Gardens, Montebello, Santa Fe Springs, Signal Hill, Artesia, Beverly Hills, La Mirada, Monrovia, Norwalk, Rancho Palos Verdes, San Marino and Westlake Village.

Thomas F. Casey III, County Counsel (San Mateo) and Miruni Soosaipillai, Deputy County Counsel for City/County Association of Governments of San Mateo County as Amicus Curiae on behalf of Plaintiffs and Appellants.

Morrison & Foerster and Robert L. Falk for Bay Area Stormwater Management Agencies Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Camille Shelton and Eric D. Feller for Defendant and Appellant.

Bill Lockyer, Attorney General, Tom Green and Mary E. Hackenbracht, Assistant Attorneys General, Helen G. Arens and Jennifer F. Novak, Deputy Attorneys General for Regional Water Quality Control Board, Los Angeles Region as Amicus Curiae on behalf of Defendant and Appellant.

No apperance for Real Party in Interest and Respondent.

**OPINION**

**ALDRICH, J.—**

## INTRODUCTION

The California Commission on State Mandates (the Commission) appeals from the judgment entered following the partial grant of cross-motions for judgment on the pleadings. The County of Los Angeles, the Los Angeles County Flood Control District, and the Cities of Commerce, Carson, Downey, Hawaiian Gardens, Montebello, Santa Fe Springs, Signal Hill, Artesia, Beverly Hills, La Mirada, Monrovia, Norwalk, Rancho Palos Verdes, San Marino and Westlake Village (collectively, County/Cities) filed a cross-appeal from the judgment.

In 2001, the Regional Water Quality Control Board (Regional Water Board), Los Angeles Region, issued a National Pollutant Discharge Elimination System (NPDES) permit for municipal stormwater and urban runoff discharges, which obligated County/Cities to inspect industrial,

commercial, and construction water treatment facilities (which obligation County/Cities claim the state previously performed) and to install and maintain trash receptacles at transit stops.

County/Cities presented "test claims"[1] to the executive director of the Commission seeking reimbursement for carrying out these obligations pursuant to the constitutional requirement for subvention arising from a state mandate (Cal. Const., art. XIII B, § 6). The executive director returned the claims unadjudicated, because they did not involve an executive order under section 17516 of the Government Code (Section 17516(c)). In denying the appeals of County/Cities, the Commission noted it was without authority to declare a statute unconstitutional and concluded that Section 17516(c) excludes from the subvention requirement any order, which includes a permit, issued by the Regional Water Boards of the State Water Resources Control Board (State Water Board).

Section 6 of article XIII B of the California Constitution (article XIII B, section 6) provides in pertinent part: "Whenever the Legislature or *any state agency* mandates a new program or higher level of service on any local government, the State shall provide a subvention of funds to reimburse that local government for the costs of the program or increased level of service . . . ." (Italics added.)

As we shall discuss, Section 17516(c) is unconstitutional to the extent it exempts Regional Water Boards from the constitutional state mandate subvention requirement. Its creation of an exception for Regional Water Boards, which are state agencies, contravenes the plain, unequivocal, and all-inclusive reference to "any state agency" in article XIII B, section 6. Moreover, a contrary conclusion is not compelled by virtue of the fact that Section 17516(c) essentially mirrors the language of section 2209, subdivision (c) (§ 2209(c)) of the Revenue and Taxation Code. A statute cannot trump the Constitution.

We decline to consider the Commission's new claim that the constitutional challenge to Section 17516(c) by County/Cities is barred by the 90-day limitation period of section 341.5 of the Code of Civil Procedure. This statute of limitations defense, which should have been raised before the trial court, is not cognizable on this appeal.

---

[1] " 'Test claim' means the first claim filed with the commission alleging that a particular statute or executive order imposes costs mandated by the state." (Gov. Code, § 17521.)

The Commission urges that should this court conclude Section 17516(c) is unconstitutional, the appropriate remedy is to afford the Commission the opportunity to pass on the merits of the subject test claims on the issues of whether (1) the subject permit qualifies as a state-mandated program under article XIII B, section 6; (2) the permit amounts to a new program or higher level of service; and (3) the permit imposes costs on local entities (Gov. Code, §§ 17514, 17556). We find its position persuasive.

The cross-appeal filed by County/Cities is premised on the theory that if subvention of funds from the Commission is foreclosed by Section 17516(c), County/Cities are entitled to pursue an independent action against the Regional Water Board, Los Angeles Region (LA Regional Water Board). This cross-appeal, which is simply protective in nature, is moot.

In sum, we uphold the trial court's issuance of a writ of mandate directing the Commission to set aside its decisions affirming its executive director's rejections of the subject test claims and to consider fully these test claims and determine whether County/Cities are entitled to reimbursement without consideration of Section 17516(c), and we affirm the judgment in its entirety.

## BACKGROUND

1. *Article XIII B, Section 6, Subvention of Funds for State Mandates*

"The electorate approved Proposition 4 in 1979, thus adding article XIII B to the state Constitution. While the earlier Proposition 13 limited the state and local governments' power to increase taxes (see Cal. Const., art. XIII A, added by initiative measure in Primary Elec. (June 6, 1978)), Proposition 4, the so-called 'Spirit of 13,' imposed a complementary limit on the rate of growth in governmental spending." (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 574 [7 Cal.Rptr.2d 245, 828 P.2d 147].) This measure also "provided [for] reimbursement to local governments for the costs of complying with certain requirements mandated by the state." (*Long Beach Unified Sch. Dist. v. State of California* (1990) 225 Cal.App.3d 155, 172 [275 Cal.Rptr. 449].)

"[V]oters were told that section 6 of Proposition 4 was intended to prevent state government attempts 'to force programs on local governments without the state paying for them.' (Ballot Pamp., Special Statewide Elec. [(Nov. 6, 1979)] p. 18.)" (*County of Sonoma v. Commission on State Mandates* (2000) 84 Cal.App.4th 1264, 1282 [101 Cal.Rptr.2d 784]; see also *County of Los Angeles v. State of California* (1987) 43 Cal.3d 46, 56 [233 Cal.Rptr. 38, 729 P.2d 202] [intent was not all local costs arising from compliance with state law to be reimbursable; rather, intent was to prevent "the perceived

attempt by the state to enact legislation or adopt administrative orders creating programs to be administered by local agencies, thereby transferring to those agencies the fiscal responsibility for providing services which the state believed should be extended to the public"].)

"Section 6 was included in article XIII B in recognition that article XIII A of the Constitution severely restricted the taxing powers of local governments. [Citation.] The provision was intended to preclude the state from shifting financial responsibility for carrying out governmental functions onto local entities that were ill equipped to handle the task. [Citations.] Specifically, it was designed to protect the tax revenues of local governments from state mandates that would require expenditure of such revenues. Thus, although its language broadly declares that the 'state shall provide a subvention of funds to reimburse . . . local government for the costs [of a state-mandated new] program or higher level of service,' read in its textual and historical context section 6 of article XIII B requires subvention only when the costs in question can be recovered *solely from tax revenues.*" (*County of Fresno v. State of California* (1991) 53 Cal.3d 482, 487 [280 Cal.Rptr. 92, 808 P.2d 235], original italics; see also *Lucia Mar Unified School Dist. v. Honig* (1988) 44 Cal.3d 830, 836, fn. 6 [244 Cal.Rptr. 677, 750 P.2d 318] [a reimbursement requirement was "enshrined in the Constitution . . . to provide local entities with the assurance that state mandates would not place additional burdens on their increasingly limited revenue resources"].)

Article XIII B, section 6 provides: "(a) Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the State·shall provide a subvention of funds to reimburse that local government for the costs of the program or increased level of service, except that the Legislature may, but need not, provide such a subvention of funds for the·following mandates. [¶] (1) Legislative mandates requested by the·local agency affected. [¶] (2) Legislation defining a new crime or changing an existing definition of a crime. [¶] (3) Legislative mandates enacted prior to January 1, 1975, or executive orders or regulations initially implementing legislation enacted prior to January 1, 1975."

■ " 'Subvention' generally means a grant of financial aid or assistance, or a subsidy. [Citation.] As used in connection with state-mandated costs, the basic legal requirements of subvention can. be easily stated; it is in the application of the rule that difficulties arise.

"Essentially, the constitutional rule of state subvention provides that the state is required to pay for any new governmental programs, or for higher levels of service under existing programs, that it imposes upon local governmental agencies. [Citation.] This does not mean that the state is required to

reimburse local agencies for any incidental cost that may result from the enactment of a state law; rather, the subvention requirement is restricted to governmental services which the local agency is required by state law to provide to its residents. [Citation.] The subvention requirement is intended to prevent the state from transferring the costs of government from itself to local agencies. [Citation.] Reimbursement is required when the state 'freely chooses to impose on local agencies *any* peculiarly "governmental" cost which they were not previously required to absorb.' [Citation.]" (*Hayes v. Commission on State Mandates* (1992) 11 Cal.App.4th 1564, 1577–1578 [15 Cal.Rptr.2d 547].)

The subvention requirement of article XIII B, section 6 is triggered if "the Legislature or any state agency" mandates a new program or higher level of service. (Art. XIII B, § 6.) Such requirement is inapplicable where the additional costs on local governments are imposed by a federal mandate, i.e., the federal government. Article XIII B, section 9, subdivision (b) of the California Constitution, defines federally mandated appropriations as those "required to comply with mandates of the courts or the federal government which, *without discretion,* require an expenditure for additional services or which *unavoidably make the provision of existing services more costly.*"[2] (Italics added.)

### 2. *Existence of State Mandate Matter for the Commission*

■ Whether a particular cost incurred by a local government arises from carrying out a state mandate for which subvention is required under article XIII B, section 6, is a matter for the Commission to determine in the first instance.

---

[2] "In 1980, after the adoption of article XIII B, [the Legislature] amended the statutory definition of 'costs mandated by the federal government' to provide that these include 'costs resulting from enactment of a state law or regulation where failure to enact such law or regulation to meet specific federal program or service requirements would result in *substantial monetary penalties* or *loss of funds* to *public or private persons* in the state. . . .' (Rev. & Tax. Code, § 2206, italics added; Stats. 1980, ch. 1256, § 3, p. 4247.)" (*City of Sacramento v. State of California* (1990) 50 Cal.3d 51, 75 [266 Cal.Rptr. 139, 785 P.2d 522].)

There is no precise formula or rule for determining whether the "costs" are the product of a federal mandate. Our Supreme Court explained: "Given the variety of cooperative federal-state-local programs, we here attempt no final test for 'mandatory' versus 'optional' compliance with federal law. A determination in each case must depend on such factors as the nature and purpose of the federal program; whether its design suggests an intent to coerce; when state and/or local participation began; the penalties, if any, assessed for withdrawal or refusal to participate or comply; and any other legal and practical consequences of nonparticipation, noncompliance, or withdrawal. Always, the courts and the Commission must respect the governing principle of article XIII B, section 9(b): neither state nor local agencies may escape their spending limits when their participation in federal programs is truly voluntary." (*City of Sacramento v. State of California, supra,* 50 Cal.3d at p. 76.)

A local government initiates the process for subvention under article XIII B, section 6 by filing a claim with the Commission. (Gov. Code, § 17521; cf. *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 89 [61 Cal.Rptr.2d 134, 931 P.2d 312] [futility exception to exhaustion of administrative remedies doctrine applicable to failure to file claim before Commission].) The initial claim is referred to as a "test claim." (Gov. Code, § 17521.)

"The Legislature enacted Government Code sections 17500 through 17630 to implement article XIII B, section 6. (Gov. Code, § 17500.)" (*County of Fresno v. State of California, supra*, 53 Cal.3d at p. 484.) The provisions of Government Code section 17500 et seq. "provide the sole and exclusive procedure by which a local agency . . . may claim reimbursement for costs mandated by the state as required by" article XIII B, section 6. (Gov. Code, § 17552.)

"It created a 'quasi-judicial body' (*ibid.*) called the Commission on State Mandates . . . ([Gov. Code], § 17525) to 'hear and decide upon [any] claim' by a local government that the local government 'is entitled to be reimbursed by the state for costs' as required by article XIII B, section 6. (Gov. Code, § 17551, subd. (a).) It defined 'costs' as 'costs mandated by the state'—'any increased costs' that the local government 'is required to incur . . . as a result of any statute . . . , or any executive order implementing any statute . . . , which mandates a new program or higher level of service of any existing program' within the meaning of article XIII B, section 6. (Gov. Code, § 17514.) Finally, in section 17556(d) it declared that 'The commission shall not find costs mandated by the state . . . if, after a hearing, the commission finds that' the local government 'has the authority to levy service charges, fees, or assessments sufficient to pay for the mandated program or increased level of service.' " (*County of Fresno v. State of California, supra*, 53 Cal.3d at p. 484.)

### 3. *Regional Water Board Order Not "Executive Order"*

Section 17516(c) defines, in pertinent part, an " '[e]xecutive order' [as] any order, plan, requirement, rule, or regulation issued by . . . [¶] . . . [¶] . . . [a]ny agency . . . of state government," except an " '[e]xecutive order' does not include any order, plan, requirement, rule, or regulation issued by the State Water . . . Board or by any regional water . . . board pursuant to Division 7 (commencing with Section 13000) of the Water Code."[3] (Added by Stats. 1984, ch. 1459, § 1, p. 5113.)

---

[3] Section 17516(c) further provides: "It is the intent of the Legislature that the State Water . . . Board and regional water . . . boards will not adopt enforcement orders against publicly owned dischargers which mandate major waste water treatment facility construction costs unless federal financial assistance and state financial assistance pursuant to the Clean

In light of the above definition, the subject permit issued by an order of the LA Regional Water Board cannot constitute an "executive order implementing any statute, . . . which mandates a new program or higher level of service of an existing program within the meaning of" the article XIII B, section 6 requirement of subvention of funds to local governments for carrying out a state mandate. (Gov. Code, § 17514.)

### 4. *Procedural Posture*

LA Regional Water Board issued order No. 01-182, which adopted NPDES permit No. CAS004001 (Permit). This Permit imposed two obligations on County/Cities for the purpose of regulating municipal stormwater and urban runoff discharges in Los Angeles County. The first required County/Cities to inspect industrial, commercial, and construction sites to ensure compliance with the law, and the other required County/Cities to install and maintain trash receptacles at transit stops.

County/Cities filed four test claims, i.e., test claims 03-TC-04, 03-TC-19, 03-TC-20, and 03-TC-21, seeking reimbursement of costs for carrying out these obligations. The executive director rejected these test claims as excluded from subvention pursuant to Section 17516(c).

In the administrative appeals, the Commission found it was bound by Section 17516(c), upheld its executive director's decision, and denied the appeals.

In their amended and consolidated petitions and complaints, County/Cities sought, among other things: (1) An order requiring the State to reimburse them for the new programs or higher level of service under the Permit or, alternatively, to allow them to offset payment of permit and other fees or moneys owed or to be transferred to the state against their costs; (2) an order enjoining state from refusing to reimburse them in the future; or, alternatively, (3) a peremptory writ of mandate directing the Commission to accept their test claims and find they are entitled to reimbursement; (4) a declaration that Government Code section 17516 is unconstitutional; (5) a peremptory writ of mandate directing LA Regional Water Board either to delete or not

---

Water Bond Act of 1970 and 1974, is simultaneously made available. 'Major' means either a new treatment facility or an addition to an existing facility, the cost of which is in excess of 20 percent of the cost of replacing the facility."

LA Regional Water Board argues the trial court's ruling sustaining its demurrer to the fourth cause of action for a writ of mandate directing it to delete the subject two obligations under the permit as violative of Government Code section 17516 should be upheld, because section 17516 "applies to construction of major waste treatment facilities, not trash receptacles or inspections." This analysis, however, is inconsistent with the plain language of section 17516 in its entirety.

enforce the subject obligations under the Permit; and (6) a stay of the challenged portions of the permit.

The Commission and County/Cities filed cross-motions for judgment on the pleadings. The trial court granted the Commission's motion as to the second cause of action for declaratory relief. The court explained: "The only actual controversy between [County/Cities] and [Commission] is whether [County/Cities]' claims should be deemed reimbursable. The sole and exclusive procedure by which to adjudicate this controversy is a mandate action under Code of Civil Procedure section 1094.5. ([Government Code s]ections 17552, 17559.) The only pertinent relief under . . . section 1094.5 is a finding that [the Commission] 'has not proceeded in the manner required by law.' Declaratory relief is not available."

After construing the motion addressed to the third cause of action as a motion to strike improper requested relief, the court granted the motion and struck that part of the third cause of action requesting an order directing the Commission to find their claims to be reimbursable on the ground "[t]he court has no power at this time to do so. [Citations.]"

Turning to County/Cities' motion for judgment on the pleadings, the trial court granted the motion as to the third cause of action for extraordinary writ relief, except as to the stricken request for improper relief.[4]

The court found that to the extent Section 17516(c) excepted the orders of Regional Water Boards from the definition of "executive orders," Section 17516(c) was unconstitutional in that it expressly contravened article XIII B, section 6. The court ordered the Commission to set aside its order affirming its executive director's rejections of the four test claims and to consider these claims on the merits.

In granting in part County/Cities' petitions for a writ of mandate, the trial court found the Commission, "though it proceeded as required by statutory law, as it was constrained to do, has not proceeded as required by superior constitutional law. (Code Civ. Proc., [§ ]1094.5, subd. (a).) The question whether [County/Cities] state valid claims for reimbursement must be remanded to [C]ommission, which is ordered to consider [these] claims on their merits. [Citations.]"

---

[4] In the third cause of action, County/Cities sought a writ of mandate (Code Civ. Proc., § 1094.5) compelling a court finding that Government Code section 17516 was unconstitutional on its face or as applied in this action and directing the Commission to accept their test claims for filing and approving them for reimbursement.

A peremptory writ of mandate was issued on May 24, 2005. Judgment was entered the same date. This appeal and cross-appeal followed.

## STANDARD OF REVIEW

"The standard for reviewing a judgment on the pleadings is settled: 'A motion for judgment on the pleadings is the equivalent of a general demurrer but is made after the time for demurrer has expired. The rules governing demurrers apply. [Citation.] The grounds for a motion for judgment on the pleadings must appear on the face of the challenged complaint or be based on facts which the court may judicially notice. [Citations.] On review we must determine if the complaint states a cause of action as a matter of law.' [Citation.] 'We review the complaint de novo to determine whether [it] alleges facts sufficient to state a cause of action under any legal theory. [Citation.]' [Citation.]" (*McCormick v. Travelers Ins. Co.* (2001) 86 Cal.App.4th 404, 408 [103 Cal.Rptr.2d 258].)

"In reviewing the trial court's ruling on a writ of mandate, the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. (*Evans* v. *Unemployment Ins. Appeals Bd.* (1985) 39 Cal.3d 398, 407 [216 Cal.Rptr. 782, 703 P.2d 122].) However, where the facts are undisputed and the issues present questions of law, the appellate court is not bound by the trial court's decision but may make its own determination. (*Ibid.*)" (*Connell v. Superior Court* (1997) 59 Cal.App.4th 382, 394 [69 Cal.Rptr.2d 231].)

## DISCUSSION

### 1. *Defense of Statute of Limitations Forfeited*

On appeal for the first time, the Commission asserts the challenge of County/Cities to the constitutionality of Section 17156(c) is barred by the 90-day limitation period of section 341.5 of the Code of Civil Procedure, which governs the timeliness of actions challenging the constitutionality of state funding for municipalities, school districts, special districts, and local agencies.

Code of Civil Procedure section 341.5 provides: "Notwithstanding any other provision of law, any action or proceeding in which a county, city, city and county, school district, special district, or any other local agency is a plaintiff or petitioner, that is brought against the State of California challenging the constitutionality of any statute relating to state funding for counties, cities, cities and counties, school districts, special districts, or other local agencies, shall be commenced within 90 days of the effective date of the

statute at issue in the action. For purposes of this section, 'State of California' means the State of California itself, or any of its agencies, departments, commissions, boards, or public officials." (Added by Stats. 1994, ch. 155, § 1, p. 1601, eff. July 11, 1994; amended by Stats. 1994, ch. 156, § 1, p. 1619, eff. July 11, 1994.)

The Commission argues the constitutional challenge to Section 17516(c) is time-barred, because: "Government Code section 17500 et seq., including section 17516, relates to state funding for counties and cities relative to state-mandated local programs. . . . [S]ection 17516 was enacted in 1984 and became effective January 1, 1985. The petition in this case challenging section 17516 as unconstitutional was filed April 28, 2004," which was more than 90 days after the effective date of section 17516.

■ The time bar of a statute of limitations may be raised by demurrer "[w]here the complaint discloses on its face that the statute of limitations has run on the causes of action stated in the complaint, [for the reason that] it fails to state facts sufficient to constitute a cause of action. [Citation.]" (*ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 833 [30 Cal.Rptr.3d 588].) Forfeiture of a time-bar defense transpires by the failure to raise the applicable statute of limitations in the answer. (See, e.g., *Minton v. Cavaney* (1961) 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473]; *Davies v. Krasna* (1975) 14 Cal.3d 502, 508 [121 Cal.Rptr. 705, 535 P.2d 1161]; *Mitchell v. County Sanitation Dist.* (1957) 150 Cal.App.2d 366, 371 [309 P.2d 930]; see also Code Civ. Proc., § 458.)

As the Commission concedes, it did not raise "[Code of Civil Procedure] section 341.5 as an affirmative defense in its pleadings in the trial court." This omission signifies that the Commission therefore has forfeited any right it may have had to assert section 341.5 to bar, as untimely, the claims of County/Cities to the constitutionality of Section 17516(c).

■ For a contrary conclusion, the Commission argues "the statute of limitations to challenge an administrative action is jurisdictional and should not be considered waived. (*United Farm Workers of America v. Agricultural Labor Relations Board* (1977) 74 Cal.App.3d 347, 350 [141 Cal.Rptr. 437]; *Tielsch v. City of Anaheim* (1984) 160 Cal.App.3d 576, 578 [206 Cal.Rptr. 740]; *Donnellan v. City of Novato* (2001) 86 Cal.App.4th 1097, 1103 [103 Cal.Rptr.2d 882].) If a time limit in a mandamus proceeding is held to be jurisdictional, estoppel or waiver cannot extend the time. (*Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 666, 674 [125 Cal.Rptr. 757, 542 P.2d 1349].)"

The Commission's fallback position is that this court should exercise its discretion to determine the applicability of the time bar, because this "issue is a question of law rather than of fact" and "[t]his matter affects the public interest since [County/Cities] are seeking reimbursement from the state for costs incurred to comply with a permit" issued by the LA Regional Water Board. In other words, "taxpayers statewide could unjustly suffer the consequences of funding a local program if Code of Civil Procedure section 341.5 is not considered and . . . section 17516 is held to be unconstitutional." As authority, the Commission relies primarily on *City of Sacramento v. State of California, supra,* 50 Cal.3d at pages 64–65 (where issue of law rather than fact raised, public interest exception governs over collateral estoppel bar) and *Connell v. Superior Court, supra,* 59 Cal.App.4th at pages 387–388, 396–397 (public interest exception applicable to allow review of question of law as to whether recycled wastewater regulation constituted reimbursable state mandate).)

■ Neither of the Commission's positions is successful. In the first instance, the time bar of section 341.5 of the Code of Civil Procedure applies to a challenge to the constitutionality of any statute relating to state funding for counties and other local governmental entities, *not* to a challenge to an action by an administrative agency. As for the second, neither *City of Sacramento* nor *Connell* stands for the proposition that the bar of the applicable statute of limitations may be raised for the first time on appeal.

Additionally, the Commission's characterization of the public interest to be served is a non sequitur. If Government Code section 17516 were in fact unconstitutional, it does not follow that "taxpayers statewide could *unjustly* suffer the consequences of funding a local program." (Italics added.) How could such funding result in injustice when any requirement of reimbursement to local governments would be under the constitutional compulsion of article XIII B, section 6

### 2. *Existence of Federal or State Mandate Issue for the Commission*

It is undisputed that a federal mandate is not subject to the subvention requirement of article XIII B, section 6 for a state mandate. Accordingly, if the Permit, including the subject two obligations thereunder, constitutes a federal mandate, the constitutionality of Section 17516(c) is not implicated, and thus, no issue as to its constitutionality is before this court to address on the merits. (See *People ex rel. Lynch v. Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126] ["The rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court."].)

In its amicus curiae brief, LA Regional Water Board takes the position that, as a matter of law, Section 17516(c) is consistent with article XIII B, section 6 (and thus not unconstitutional) "to the extent Division 7, Chapter 5.5 (commencing with Water Code section 13370)" simply implements federal mandates under the Clean Water Act (33 U.S.C. § 1342(b)). The water boards, i.e., the State Water Board and its Regional Water Boards, implement the federal permit program under chapter 5.5, which the California Legislature enacted to bypass administration of such program directly by the federal Environmental Protection Agency.

LA Regional Water Board takes the further position that the federal mandate nature of its NPDES permits remains constant although it exercises discretion to control the discharge of pollutants through municipal stormwater programs not appearing in federal regulations. Specifically, LA Regional Water Board argues: "When a state [Regional Water Board] issues an NPDES permit requiring municipalities to inspect facilities as a means of controlling their discharge of pollutants, this is not shifting state responsibilities onto local agencies[, because f]ederal law imposes inspection requirements upon municipal permittees."

As for the trash receptacle obligation, LA Regional Water Board points out the Clean Water Act allows the use of programs to control discharge of pollutants in connection with a municipal stormwater permit and argues one such program under the Permit is the ability of "municipalities to employ 'Best Management Practices' (BMPs) to . . . attain water quality standards." It identifies "[t]he Permit's trash receptacle requirement as one such [BMP]."

It further argues that the trash receptacle obligation cannot be deemed a state-mandated program, because it is not "an' absolute requirement. Any permittee may petition the Regional Water Board to substitute another equally effective BMP for one included within the Permit.[] [For instance, i]f a permittee demonstrates that a pre-existing program or level of service will be equally effective in controlling pollution, it may seek to substitute that program."

We are not convinced that the obligations imposed by a permit issued by a Regional Water Board necessarily constitute federal mandates under all circumstances. As explained, *ante*, the existence of a federal, as contrasted with a state, mandate is not easily ascertainable.

By letter, we invited the parties and LA Regional Water Board to address whether an obligation under an NPDES permit by a Regional Water Board can qualify as a state mandate within the meaning of article XIII B, section 6, assuming an NPDES permit itself qualified as a federal mandate, and if so,

why each of the subject two obligations does or does not constitute a state mandate. We have received their responses.

### a. *NPDES Permits Issued by Regional Water Boards*

"California cases have repeatedly explained the complicated web of federal and state laws and regulations concerning water pollution, especially storm sewer discharge into the public waterways. (*City of Burbank v. State Water Resources Control Bd.* (2005) 35 Cal.4th 613, 619–621 [26 Cal.Rptr.3d 304, 108 P.3d 862] (*Burbank*); *Building Industry Assn. of San Diego County v. State Water Resources Control Board* (2004) 124 Cal.App.4th 866, 872–875 [22 Cal.Rptr.3d 128] . . . ; *Communities for a Better Environment v. State Water Resources Control Bd.* (2003) 109 Cal.App.4th 1089, 1092–1094 [1 Cal.Rptr.3d 76] . . . ; *WaterKeepers Northern California v. State Water Resources Control Bd.* (2002) 102 Cal.App.4th 1448, 1451–1453 [126 Cal.Rptr.2d 389].)

 "For purposes of this case, the important point is described by the California Supreme Court in *Burbank*: 'Part of the Federal Clean Water Act [33 U.S.C. § 1251 et seq.] is the National Pollutant Discharge Elimination System (NPDES), "[t]he primary means" for enforcing effluent limitations and standards under the Clean Water Act. (*Arkansas v. Oklahoma* [(1992) 503 U.S. 91, 101 [117 L.Ed.2d 239, 112 S.Ct. 1046]].) The NPDES sets out the conditions under which the federal [Enviromental Protection Agency] or a state with an approved water quality control program can issue permits for the discharge of pollutants in wastewater. (33 U.S.C. § 1342(a) & (b).) In California, wastewater discharge requirements established by the regional [water] boards are the equivalent of the NPDES permits required by federal law. (§ 13374.)' (*Burbank, supra,* 35 Cal.4th at p. 621.)

"California's Porter-Cologne Act (Wat. Code, § 13000 et seq.) establishes a statewide program for water quality control. Nine regional [water] boards, overseen by the State [Water] Board, administer the program in their respective regions. (Wat. Code, §§ 13140, 13200 et seq., 13240, and 13301.) Water Code sections 13374 and 13377 authorize the Regional [Water] Board to issue federal NPDES permits for five-year periods. (33 U.S.C. § 1342, subd. (b)(1)(B).)"[5] (*City of Rancho Cucamonga v. Regional Water Quality*

---

[5] In pertinent part, article XIII B, section 6, provides: "[T]he Legislature may, but need not, provide a subvention of funds for the following mandates: [¶] . . . [¶] (3) Legislative mandates enacted prior to January 1, 1975, or executive orders . . . initially implementing legislation enacted prior to January 1, 1975." (Art. XIII B, § 6, subd. (a)(3).) LA Regional Water Board argues that subvention under article XIII B, section 6, is not required as to the Permit, because it is an executive order implementing the Porter-Cologne Water Quality Control Act (Wat. Code, § 13020 et seq.), which is legislation enacted in 1969. This argument fails for the

*Control Bd.* (2006) 135 Cal.App.4th 1377, 1380–1381 [38 Cal.Rptr.3d 450].) In a related case, Division Five of this district upheld the authority of LA Regional Water Board to issue the Permit here. (*County of Los Angeles v. State Water Resources Control Board* (2006) 143 Cal.App.4th 985, 999–1000 [50 Cal.Rptr.3d 619], review den. [holding the nine Regional Water Boards authorized under state law to issue NPDES permits].)

### b. *Potential Federal and State Components of NPDES Permit*

As expected, LA Regional Water Board contends that as in the case of NPDES "permits as a whole, the individual conditions of an NPDES permit are federally required to meet the mandates of the Clean Water Act." It argues: "The Permit is federally required. The conditions within it are federally required to implement the Clean Water Act's mandates. The two cannot be separated into a 'federal' permit with 'state' conditions. [Citation.]"

County/Cities respond, contrariwise, that "[a]n NPDES permit can contain both federal and nonfederal requirements." As case authority, they rely primarily on *City of Burbank v. State Water Resources Control Bd., supra,* 35 Cal.4th 613. Our Supreme Court concluded that under the supremacy clause of the federal Constitution, a Regional Water Board must comply with the federal Clean Water Act in issuing an NPDES permit. (35 Cal.4th at pp. 626–627.) Nonetheless, "[u]nder the federal Clean Water Act, each state is free to enforce its own water quality laws so long as its effluent limitations are not 'less stringent' than those set out in the Clean Water Act. [Citation.]" (*Id.* at p. 620.) The court thus acknowledged in *Burbank* that an NPDES permit may contain terms federally mandated and terms exceeding federal law. (See also *Burbank, supra,* at pp. 618, 628.) County/Cities also point out that the potential for non-federally mandated components of an NPDES permit is acknowledged under both federal law[6] and state law.[7]

---

reason that the executive order resulting in the 2001 Permit was not one *"initially"* implementing such pre-1975 legislation. Equally unsuccessful is LA Regional Water Board's apparent argument that Section 17516(c) should be deemed constitutional for the reason that "most of" the Porter-Cologne Act (div. 7) was enacted prior to 1975. The fatal fallacy of this position is that the exclusion of Section 17516(c) applies to all orders issued pursuant to division 7 *regardless* of the date the statute in question was enacted.

[6] In this regard, they rely on this federal statute: "Except as expressly provided in this Act [33 USCS §§ 1251 et seq.], nothing in this Act [33 USCS §§ 1251 et seq.] shall (1) preclude or deny the right of any State or political subdivision thereof or interstate agency to adopt or enforce (A) any standard or limitation respecting discharges of pollutants, or (B) any requirement respecting control or abatement of pollution; except that if an effluent limitation, or other limitation . . . is in effect under this Act [33 USCS §§ 1251 et seq.], such State[, etc.] . . . may not adopt or enforce any effluent limitation or other limitation . . . which is less stringent than the effluent limitation, or other limitation . . . ." (33 U.S.C.S. § 1370.)

[7] On this point, they rely on this statutory provision: "Notwithstanding any other provision of this division, the state board or the regional boards shall, as required or authorized by the

Additionally, County/Cities argue "that an obligation imposed on a municipality arises as a result of a federal law or program does not, in and of itself, render that obligation a federal mandate." Rather, they assert that to qualify as a federal mandate, "federal law itself must impose the obligation upon the municipality." They point out Government Code section 17556 provides that costs flowing from a federal mandate may be subject to subvention if such costs exceed such mandate.[8] They also cite two cases in support of their position.

In *San Diego Unified School Dist. v. Commission on State Mandates* (2004) 33 Cal.4th 859 [16 Cal.Rptr.3d 466, 94 P.3d 589], our Supreme Court concluded the costs incurred by school districts in holding mandatory expulsion hearings under Education Code section 48915 were state mandates subject to subvention under article XIII B, section 6. The court explained that expulsion was mandated under the Education Code, rather than federal law, and thus, the fact the costs were incurred to comport with federal due process, a federal mandate, was not controlling. (*San Diego Unified School Dist. v. Commission on State Mandates, supra*, at pp. 880–882.)

In the other case, *Hayes v. Commission on State Mandates, supra*, 11 Cal.App.4th 1564, the appellate court concluded that the finding a mandate was federal turned on whether "the state freely chose to impose the costs upon the local agency as a means of implementing a federal program" and that under these circumstances, "the costs are the result of a reimbursable state mandate regardless whether the costs were imposed upon the state by the federal government." (*Id.* at p. 1594.)

c. *Existence of State Mandates Matter for the Commission*

A review of the pleadings and the matters that may be judicially noticed (Evid. Code, §§ 451, 452, 459) leads to the inescapable conclusion that whether the two obligations in question constitute federal or state mandates presents factual issues which must be addressed in the first instance by the

---

Federal Water Pollution Control Act, as amended, issue waste discharge requirements . . . which apply and ensure compliance with all applicable provisions of the act and acts amendatory thereof or supplementary, thereto, together with any more stringent effluent standards or limitations necessary to implement water quality control plans, or for the protection of beneficial uses, or to prevent nuisance." (Wat. Code, § 13377.)

[8] Government Code section 17556, subdivision (c), provides: "The commission shall not find costs mandated by the state, as defined in Section 17514, in any claim submitted by a local agency or school district, if, after a hearing, the commission finds . . . [¶] . . . [¶] [t]he statute or executive order imposes a requirement that is mandated by a federal law or regulation and results in costs mandated by the federal government, unless the statute or executive order mandates costs that exceed the mandate in that federal law or regulation."

Commission if Section 17516(c) were found to be unconstitutional. Resolution of the federal or state nature of these obligations therefore is premature and, thus, not properly before this court.

In its response, the Commission argues that if this court determines Section 17516(c) is unconstitutional, the subject test claims "should be remanded to . . . Commission to 'decide in the first instance whether a local agency is entitled to reimbursement under [article XIII B,] section 6[.]' (*Lucia Mar Unified School District v. Honig*[, *supra*,] 44 Cal.3d 830, 837; Gov. Code, § 17552.)"

The Commission stated that on such remand, it would apply the following cases in determining whether state mandates exist: *City of Sacramento v. State of California, supra*, 50 Cal.3d 51, which sets forth various factors and criteria for determining whether the federal program imposes a mandate on the state; *Hayes v. Commission on State Mandates, supra*, 11 Cal.App.4th 1564, which it contends "provides guidance on whether the state, in turn, has mandated a federal program on the local governments"; *Long Beach Unified Sch. Dist. v. State of California, supra*, 225 Cal.App.3d 155, which analyzes whether the state-mandated activities exceed federal requirements; and *San Diego Unified School Dist. v. Commission on State Mandates, supra*, 33 Cal.4th 859, which also provides guidance on this same issue.

### 3. *"Executive Order" Under Revenue and Taxation Code Not Probative*

The Commission contends the exclusion of orders of the Regional Water Boards from the definition of "executive order" in Section 17516(c) does not contravene article XIII B, section 6, because Government Code section 17516 derives from the definition of "executive order" in Revenue and Taxation Code section 2209,[9] of which the voters were presumed to have known to exist

[9] Revenue and Taxation Code section 2209(c) provides: " 'Executive order' means any order, plan, requirement, rule or regulation issued . . . [¶] . . . [¶] . . . [b]y any agency . . . of state government; provided that the term 'executive order' shall not include any order . . . issued by the State Water . . . Board or by any regional water . . . board pursuant to Division 7 (commencing with Section 13000) of the Water Code.

"It is the intent of the Legislature that the State Water . . . Board and regional water . . . boards will not adopt enforcement orders against publicly owned discharges which mandate major waste water treatment facility construction costs unless federal financial assistance and state financial assistance pursuant to the Clean Water Bond Act of 1970 and 1974, is simultaneously made available.

" 'Major' means either a new treatment facility or an addition to an existing facility, the cost of which is in excess of 20 percent of the cost of replacing the facility." (Rev. & Tax. Code, § 2209(c), added by Stats. 1974, ch. 457, § 2, p. 1079, and amended by Stats. 1975, ch. 486, § 2, p. 998, eff. Sept. 2, 1975.)

when they adopted Proposition 4 (i.e., art. XIII B, § 6) in 1979, and thus, Proposition 4 intended to endorse and continue such exclusion from the definition of "executive order" which was later carried over to Section 17516(c). We disagree.

We further disagree with the Commission's reliance on a presumption that when the voters adopted Proposition 1A in November 2004, they knew of, and thus, necessarily approved of Section 17516(c)'s exclusion of orders of Regional Water Boards from the definition of "executive order."

■ Our focus, instead, must be on the import of article XIII B, section 6, not on the preconstitutional scheme for subvention of funds to local agencies of which section 2209 of the Revenue and Taxation Code was part. As our Supreme Court instructs: "In construing the meaning of the constitutional provision [i.e., article XIII B, section 6], our inquiry is not focussed on what the Legislature intended in adopting the former statutory reimbursement scheme, but rather on what the voters meant when they adopted article XIII B in 1979. To determine this intent, we must look to the language of the provision itself. [Citation.]" (*County of Los Angeles v. California, supra,* 43 Cal.3d at p. 56.)

■ The subvention requirement of article XIII B, section 6 applies "[w]henever the Legislature or any state agency mandates a new program or higher level of service . . . ." The all-encompassing "any state agency" language defeats any perceived presumption that the electorate intended to incorporate into article XIII B, section 6 the exclusion of a particular state agency, e.g., the Regional Water Board, from its subvention requirement.

4. *Section 17516(c) Unconstitutional as to Regional Water Boards*

LA Regional Water Board argues in its amicus curiae brief that Section 17516(c) is constitutional for the additional reason that its exemption from the subvention requirement of article XIII B, section 6, is "appropriate because the Water Boards regulate water pollution with an even hand. Whether the pollution originates from a local public agency or a private industrial source, the Water Boards must assure their permits protect water quality consistent with state and federal law."

This argument is not persuasive. Whether the permit in question issued by Regional Water Boards governs both public and private pollution dischargers to the same extent presents factual issues not yet resolved. In any event, the applicability of permits to public and private dischargers does not inform us about whether a particular permit or an obligation thereunder imposed on local governments constitutes a state mandate necessitating subvention under article XIII B, section 6. (See *Carmel Valley Fire Protection Dist. v. State of*

*California* (1987) 190 Cal.App.3d 521, 530–531, 534, 537, 541 [234 Cal.Rptr. 795] [executive orders for protective fire clothing and equipment state mandated even if record, which was incomplete, revealed private sector firefighters also subject to the executive orders].)

■ In contrast, the constitutional infirmity of Section 17516(c) is readily apparent from its plain language that the definition of " '[e]xecutive order' does not include *any* order, plan, requirement, rule, or regulation *issued by the State Water . . . Board or by any regional water . . . board* pursuant to Division 7 (commencing with Section 13000) of the Water Code." (§ 17516(c), italics added.) This exclusion of any ·order issued by any Regional Water Board contravenes the clear, unequivocal intent of article XIII B, section 6 that subvention of funds is required "[w]henever . . . *any state agency* mandates a new program or higher level of service on any local government . . . ."[10] (Italics added.) We therefore conclude that Section 17516(c) is unconstitutional to the extent it excludes "any order . . . issued by . . . any regional water . . . board pursuant to Division 7 (commencing with Section 13000) of the Water Code" from the definition of " '[e]xecutive order.' " (Art. XIII B, § 6.)

This conclusion leads to the further conclusion that whether one or both of the subject two obligations constitutes a state mandate necessitating subvention of funds under article XIII B, section 6 is an issue that must in the first instance be resolved by the Commission. Accordingly, we uphold the trial court's issuance of a writ of mandate directing the Commission to vacate its decisions affirming its executive director's rejection of the four test claims and to consider these claims on the merits.

### 5. *Cross-appeal Moot*

County/Cities filed a protective cross-appeal from the judgment to the extent the trial court dismissed the portions of their writ of mandate petitions against LA Regional Water Board.[11] The threshold issue raised is whether County/Cities are entitled to proceed directly in superior court against LA

[10] At oral argument, when asked to identify the public policy or other reason that would be served by exempting Regional Water Boards from the constitutional subvention requirement, counsel for LA Regional Water Board responded exemption is warranted, because water is an important concern. No one can quarrel with the fact water plays an important role in California. Nonetheless, this reason does not compel the conclusion that an exemption should be carved out for Regional Water Boards as contrasted with those state agencies which regulate other important state interests.

[11] The trial court sustained the demurrer to the fourth cause of action for a writ of mandate directing LA Regional Water Board to delete or not enforce the inspection and trash receptacle obligations. The court granted its own motion for judgment on the pleadings without leave to amend as to LA Regional Water Board on the first cause of action for a writ of mandate

Regional Water Board for reimbursement relief if they are statutorily precluded from obtaining a hearing before the Commission.

County/Cities' position is they are entitled to a hearing on the merits of their claims before either the Commission or LA Regional Water Board. If this court determines the Commission's jurisdiction is exclusive, the Commission must afford them a hearing and determine the merits of their subvention claim under article XIII B, section 6. If not exclusive, County/Cities must be allowed to seek relief directly against Regional Water Board before the superior court.

LA Regional Water Board argues County/Cities have no right to seek subvention relief from a Regional Water Board, because reimbursement of costs mandated by the state must be pursued through the statutory subvention scheme, which is "the sole and exclusive procedure by which a local agency . . . may claim reimbursement for costs mandated by the state as required by Section 6 of Article XIII B . . . ." (Gov. Code, § 17552.) Their claims thus must be addressed exclusively to the Commission in first instance.

The cross-appeal against LA Regional Water Board is moot in light of our above conclusion that the Commission is to hear and determine the merits of the County/Cities' test claims. We therefore do not reach the merits of the issues raised in the cross-appeal.

## CONCLUSION

■ Section 17516(c) is unconstitutional to the extent it purports to exempt orders issued by Regional Water Boards from the definition of "executive orders" for which subvention of funds to local governments for carrying out state mandates is required pursuant to article XIII B, section 6. The trial court therefore properly issued a writ of mandate directing the Commission to resolve the four test claims on the merits without reference to Section 17516(c). In light of this conclusion, we need not, and therefore do not, address the issues raised on the now moot cross-appeal.

directing reimbursement; the second cause of action for declaratory relief; and the fifth cause of action for a writ of mandate directing LA Regional Water Board to delete or not enforce the subject obligations.

## DISPOSITION

The judgment is affirmed. Each party shall bear its own costs on appeal and cross-appeal.

Klein, P. J., and Croskey, J., concurred.