Filed 6/27/25  City of Arcata v. Citizens in Support of Measure M CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CITY OF ARCATA,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CITIZENS IN SUPPORT OF MEASURE M,<br><br>        Defendant and Appellant. | A170957<br><br><br>(Humboldt County<br>Super. Ct. No. CV2300554) |

The City of Arcata (City) filed an action seeking a declaration from the trial court as to whether Measure M—a recently passed voter initiative requiring the City to fly the "Earth Flag" above all other flags, including the official flags of the United States of America and the State of California—violated state law.[1]  The court granted the City's motion for judgment on the pleadings.  Citizens in Support of Measure M (Citizens) appeal.  We affirm.

## I.  BACKGROUND

The salient facts are not disputed.  In November 2022, the City's voters passed Measure M, an initiative to enact an ordinance requiring the City to "fly the Earth Flag at the top of all city-owned flagpoles, above the flag of the

---

[1] As described by the initiative, the "Earth Flag" is the blue flag featuring a photographic image of the Earth taken from the Apollo 17 spacecraft on December 7, 1972.  This image is often called the "Blue Marble."

United States of America and the California flag, and any other flags that the city may choose to display." Measure M passed with 3,051 votes in favor of the measure and 2,781 votes against it. The City subsequently adopted Measure M as an ordinance (the Ordinance), as required by Elections Code section 9217.[2]

The City subsequently filed an action in the trial court to clarify the legality of implementing the Ordinance given state and federal laws that require the flag of the United States (National Flag) to be flown above all other flags on public property. Citizens then filed an answer. Both parties later filed motions for judgment on the pleadings.

After hearing oral argument on the motions, the trial court took the matter under submission. Thereafter, the court issued a written decision granting the City's motion for judgment on the pleadings. The court found that state law required the City to fly the National Flag at the top of its flag poles, that the Ordinance violated California laws, and that a voter initiative could not exempt the City from compliance with these state laws. The court also held that the free speech rights of the City's voters were not implicated by these findings because the Ordinance compels speech by the City, not by private actors, and therefore falls outside the purview of the First Amendment.

This appeal followed.

---

[2] Elections Code section 9217 provides in relevant part the following: "If a majority of the voters voting on a proposed ordinance vote in its favor, the ordinance shall become a valid and binding ordinance of the city. The ordinance shall be considered as adopted upon the date that the vote is declared by the legislative body, and shall go into effect 10 days after that date."

## II.  DISCUSSION

Citizens seek reversal of the trial court's judgment on the City's motion for judgment on the pleadings.

A defendant may move for judgment on the pleadings on the grounds that the complaint does not state facts sufficient to constitute a cause of action against that defendant.  (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii).) " 'The grounds for a motion for judgment on the pleadings must appear on the face of the challenged complaint or be based on facts which the court may judicially notice.' " (*County of Los Angeles v. Commission on State Mandates* (2007) 150 Cal.App.4th 898, 911.)  "A motion for judgment on the pleadings 'is equivalent to a demurrer and is governed by the same de novo standard of review.' " (*Environmental Health Advocates, Inc. v. Sream Inc.* (2022) 83 Cal.App.5th 721, 728.)  "If a judgment on the pleadings is correct on any theory of law applicable to the case, we will affirm it regardless of the considerations used by the superior court to reach its conclusion." (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 185.)

The question before us is whether the City is authorized to implement Measure M, an ordinance directing government action that, if performed, would contravene state law.  For the reasons explained below, we conclude the City may not implement the Ordinance.

### A.    *Measure M Is Preempted by State Law*

Under article XI, section 7 of the California Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws*." (Italics added.)  Put another way, "[o]ur state's Constitution grants state laws enacted by our Legislature supremacy over nearly all ordinances adopted by the more local government entities such as counties and cities." (*AIDS*

*Healthcare Foundation v. Bonta* (2024) 101 Cal.App.5th 73, 82 (*AIDS Healthcare*).) Thus, " '[i]f otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' " (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 (*Sherwin-Williams*).) A conflict exists between local legislation and state legislation if the local legislation " ' " 'duplicates, *contradicts*, or *enters an area fully occupied by general law*, either expressly or by legislative implication.' " ' " (*Ibid.*, italics added.)[3]

As relevant here, local legislation contradicts state law when an "ordinance directly requires what the state statute forbids or prohibits what the state enactment demands." (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 743 (*City of Riverside*).) These principles of preemption apply not only to local legislation adopted by local government but also to local legislation enacted by means of a voter initiative. (*AIDS Healthcare*, *supra*, 101 Cal.App.5th at p. 89 [concluding that the "Legislature may preempt local laws adopted through the initiative power"].)

"State law fully occupies a field 'when the Legislature "expressly manifest[s]" its intent to occupy the legal area or when the Legislature "impliedly" occupies the field.' " (*T-Mobile West LLC v. City and County of San Francisco* (2019) 6 Cal.5th 1107, 1116 (*T-Mobile*).) Implied preemption "generally exists where the Legislature has comprehensively regulated in an area, leaving no room for additional local action." (*Id.* at p. 1122.)

---

[3] The City is a general law city. The preemption analysis depends on whether a city operates as a general law city or as a chartered city. (*AIDS Healthcare*, *supra*, 101 Cal.App.5th at p. 82.) General law cities are organized under the general laws of California; chartered cities—as the name suggests—are organized under a charter. (*City of Orange v. San Diego County Employees Retirement Assn.* (2002) 103 Cal.App.4th 45, 52.)

Applying these principles here, we conclude that state law fully occupies the area of law pertaining to the flying of the National Flag. More particularly, throughout Government Code sections 430 through 439, in a chapter titled "Chapter 3. Display of Flags," the Legislature established a statutory scheme directing where, when, and how various flags including the national, state, and city and county flags, must be displayed in California.[4] Among other things, this statutory scheme provides that the National Flag must be prominently displayed in courtrooms, at places where government commissions hold session, in front of public buildings, at state parks and public schools, and during all games and performances that take place in a coliseum, stadium, racetrack, or open-air site. (§§ 430, 431, 432.) It also requires public officials charged with furnishing places publicly owned by the state, county, or municipality to provide for the acquisition, installation, display and maintenance of the National Flag (§ 434); establishes the place of manufacture for National Flags purchased by the state and local government (§ 434.7); and sets forth regulations regarding the relative size of National and State Flags[5] that are flown, the order in which they must be flown, and the types of restrictions that can be implemented relative to the placement or display of the National Flag (§§ 434.5, 436).

Of particular relevance here is section 436, which provides, "Where the National and State Flags are used, they shall be of the same size. If only one flagpole is used, the National Flag *shall be above* the State Flag and the State Flag shall be hung in such manner as not to interfere with any part of the National Flag. At all times the National Flag *shall* be placed in the *position*

---

[4] Further undesignated statutory references are to the Government Code.

[5] "The Bear Flag is the State Flag of California." (§ 420.)

5

*of first honor*."  (Italics added.)  This mandate is absolute, barring a small carveout the Legislature provided in section 434.5, which states that entities such as cities and counties can impose "reasonable restrictions" on the time, placement, and manner of display of the National Flag, but only when "necessary for the preservation of the public's health, safety, or order." (§ 434.5, subd. (b)(2).)  These provisions make clear that the Legislature has adopted a comprehensive regulatory scheme governing the display of the National Flag that leaves minimal room for local action.  (See *T-Mobile*, *supra*, 6 Cal.5th at p. 1122.)

Against this scheme, the Ordinance seeks to regulate placement of the National Flag in a manner that directly contradicts state law on this same issue.  Though section 436 does not explicitly define what it means for the National Flag to occupy the "position of first honor" on a flagpole, to help determine the meaning of this phrase, we may turn to a principle of statutory construction called *noscitur a sociis*, which means "the meaning of a word may be known from the accompanying words."  (See *The Zumbrun Law Firm v. California Legislature* (2008) 165 Cal.App.4th 1603, 1619.)  Under this principle, " '[a] word of uncertain meaning may be known from its associates and its meaning "enlarged or restrained by reference to the object of the whole clause in which it is used." ' "  (*Wendz v. State Dept. of Education* (2023) 93 Cal.App.5th 607, 652.)

Applied here, we observe that section 436's reference to the National Flag occupying a "position of first honor" is preceded by the directive that where both the National Flag and State Flag are flown on one flagpole, "the National Flag *shall be above* the State Flag and the State Flag shall be hung in such manner as not to interfere with any part of the National Flag." (§ 436, italics added.)  We therefore conclude that, at the very least, to be in a

6

"position of first honor" means that where more than one flag is flown on one flagpole, the National Flag must be placed above other flags and hung in such a way that other flags do not interfere with any part of it. (See *ibid*.)

Given the foregoing, we find no error in the trial court's conclusion that the Ordinance conflicts with and violates section 436. As the City is statutorily responsible for the installation and display of the National and State Flags (§ 434), the Ordinance's requirement that the Earth Flag be flown above all other flags, including the National Flag, on all City-owned flagpoles is directly at odds with section 436's requirement that the National Flag occupy the "position of first honor." As such, the Ordinance was preempted by state statute.[6] (See *Sherwin-Williams*, *supra*, 4 Cal.4th at p. 897; *City of Riverside*, *supra*, 56 Cal.4th at p. 743.)

Citizens disagree with the above analysis and argue that preemption should not apply to a local voter initiative involving state symbolism (e.g., flag display). Citizens contend that voters in a community have the right to determine for themselves whether to conform to the "symbolism suggested by the state." We cannot agree.

As stated, *ante*, the Legislature has established a comprehensive statutory scheme addressing the display of flags. (§ 430 et seq.) Section 436 is a mandatory statute. It does not *suggest* but instead *requires* the National Flag to occupy the position of first honor on city-owned flagpoles. Accordingly, where city flagpoles are involved, the Legislature has removed

---

[6] Based on our conclusion, we need not reach the issue of whether the Ordinance was additionally preempted by Military and Veterans Code section 617, which similarly provides that "[n]o other flag or pennant shall be placed above, or if on the same level, to the right of the Flag of the United States of America, except during church services, when the church flag may be flown."

7

all discretion from cities in their display of the National Flag, except for "reasonable restrictions" they may impose on "the time, place, and manner of placement or display" of the National Flag when "necessary for the preservation of the public's health, safety, or order." (§ 434.5, subd. (b)(2).) Citizens do not claim the Ordinance falls within this exception. As such, the Ordinance is preempted notwithstanding the fact it arose out of a voter initiative. (See *AIDS Healthcare*, *supra*, 101 Cal.App.5th at p. 89 [voter initiatives are subject to preemption].)[7]

Additionally, Citizens propose that where voter initiatives conflict with statutes, preemption should apply only where there is evidence of the Legislature's "specific intention to neutralize the reserved power of the initiative on a local level" or to preempt the entire field to the exclusion of all local control. Citizens profess this approach as commensurate with the need to protect the power of the voter initiative. In this case, Citizens see no evidence of a legislative intent to undercut the power of the local initiative. Citizens' arguments are not well taken.

While we recognize the unique significance of the voter initiative power, we disagree it enables voters to enact an ordinance directly in conflict with section 436. Whether viewed alone, or in the broader context of the statutory scheme (§§ 420–439), the Legislature has left no room for noncompliance: Section 436 applies to the display of the National Flag and

---

[7] We find it noteworthy that in *AIDS Healthcare*, preemption applied even when the Legislature created a new law allowing local government to engage in activities that an earlier-enacted initiative forbade. (*AIDS Healthcare*, *supra*, 101 Cal.App.4th at p. 89.) The fact that the initiative existed first did not shield it from preemption. (*Id*. at pp. 94–95.) It follows then that preemption should clearly apply where, as here, a conflicting ordinance was enacted decades after a state statute governing the same subject matter (i.e., § 436).

8

the State Flag on the same flagpole and the National Flag must occupy the position of first honor "[a]t *all* times." (§ 436, italics added.) Coupled with the statutory scheme's comprehensive regulation of public displays of the National Flag, it is clear the Legislature intended to compel statewide uniformity in the display of these official symbols of state.

The cases cited by Citizens in support of their proposition are either inapposite or too factually distinguishable to sway our analysis. (See, e.g., *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1033 (*Tuolumne*); *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 930 (*California Cannabis Coalition*); *Coalition of County Unions v. Los Angeles County Bd. of Supervisors* (2023) 93 Cal.App.5th 1367, 1392 (*Coalition of County Unions*).)

We disagree with Citizens' claim that *Tuolumne* and *California Cannabis Coalition* support the conclusion that, where there is no evidence of specific legislative intent to restrict the initiative power, city voters may pass an initiative that conflicts with state law. *Tuolumne* did not involve a voter initiative enacted to directly conflict with existing state law, much less hold that such initiatives are permissible in the absence of explicit legislative intent to restrict the initiative power. Rather, in *Tuolumne*, the high court was faced with the interplay between the California Environmental Quality Act (CEQA) statutory framework and now repealed Elections Code section 9214, subdivisions (a) and (c), the statute governing the adoption of local voter initiatives. (*Tuolumne*, *supra*, 59 Cal.4th at p. 1037.) In this context, the court held that CEQA compliance was not required before a city directly adopted a voter initiative under former section 9214, subdivision (a). (*Tuolumne*, at pp. 1037–1042.) Thus, *Tuolumne* has no bearing on whether a

9

statement of express legislative intent is required before state law will preclude a directly conflicting voter initiative.

Citizens also incorrectly cite *California Cannabis Coalition*, for the proposition that a local initiative can exempt itself from statutes that are applicable to the rest of the state. (*California Cannabis Coalition*, *supra*, 3 Cal.5th at p. 936.) That is not the holding of the case. In *California Cannabis Coalition*, the California Supreme Court concluded a constitutional provision forbidding *local governments* from imposing taxes (except upon certain conditions) did not bar *local voters* from imposing taxes by initiative. (*Id.* at pp. 936–937.) In so concluding, the court would not assign limitations on local government to voters "[w]ithout an unambiguous indication" of a purpose to so "constrain the initiative power." (*Id.* at pp. 945–946.)

Citizens seize upon this language to underscore their position that the Ordinance should not be preempted without some "clear evidence" from the Legislature of its intended purpose to constrain exercise of the initiative power. But this argument is flawed because, as evident above, the *California Cannabis Coalition* court was not faced with a local initiative that directly conflicted with state law but with a constitutional provision's effect on the scope of the initiative power to impose taxes. (See *California Cannabis Coalition*, *supra*, 3 Cal.5th at p. 930.) As such, the situation that gave rise to the language Citizens rely on was wholly distinguishable. Further, we note that in *California Cannabis Coalition*, the high court affirmed that preemption applies equally to voter initiatives as to local government enactments. (See *id.* at p. 942.) Specifically, in its discussion, the California Supreme Court explained: "*When a local government lacks authority to legislate in an area, perhaps because the state has occupied the field* [citation]*, that limitation also applies to the people's local initiative*

10

*power* [citation]." (*Ibid.*, italics added.) This statement does not support Citizen's contention that the preemption analysis changes for ordinances created by voter initiative than for ordinances created by local government.

*Coalition of County Unions*, *supra*, 93 Cal.App.5th 1367, is also distinguishable. First, the case did not involve a voter initiative, but a resolution adopted by a county board of supervisors and placed on the ballot to amend a county charter. (*Id.* at p. 1378.) Secondly, and unlike here, the measure there did not conflict with state statutory law. (*Id.* at p. 1383.) As such, *Coalition of County Unions* is inapposite.

In sum, we are not persuaded that the local initiative power enables voters to exempt a city from the mandatory flag display requirements of section 436. The principles of preemption apply here to bar the City's implementation of the Ordinance.

## B. *Voters' Free Speech Rights Are Not Implicated, and Strict Scrutiny Review Is Not Warranted*

Citizens characterize California's flag display laws as regulations on the expression of a community's values and priorities. They frame the issue on appeal as "whether the state government can override an ordinance passed by the direct vote of a jurisdiction on an issue of symbolism where the cultural and political priorities of a community are not in concert with a state law of a purely symbolic concern."

Citizens maintain that appropriate deference to the voter initiative power should require a "strict scrutiny" analysis or some showing that a compelling state interest is frustrated by the Ordinance. However, they also acknowledge a lack of existing legal authority for these propositions. Other than highlighting judicial recognition for the special place the initiative power holds in California—principles of which we are mindful—Citizens fail to provide cogent and substantiated arguments that explain why new rules

11

should be created to modify or replace the well-established principles of preemption discussed above. (See *Los Angeles Unified School Dist. v. Casasola* (2010) 187 Cal.App.4th 189, 212.)

The strict scrutiny standard of review generally applies when a challenged law " 'draws a suspect classification' " or " 'burdens fundamental rights.' " (*People v. Yang* (2022) 78 Cal.App.5th 120, 131.) Under this type of review, a law " 'can be sustained only if [it is] necessary to achieve a compelling state interest.' " (*Conservatorship of Eric B.* (2022) 12 Cal.5th 1085, 1107.) Here, there has been no showing that a suspect classification has been drawn or that fundamental rights have been burdened. Strict scrutiny analysis therefore does not apply.

Citizens argue there has been an impingement on the voters' freedom of speech and right to express themselves through the manner in which the City flies its flags. But Citizens never clearly pinpoint the specific content-based regulation they believe infringes their rights. To support their proposal that strict scrutiny applies to content-based regulations, Citizens look to instances where ballot initiatives were subject to preelection judicial review or subject matter restrictions. These references are distinguishable as the record here does not indicate that the Ordinance was subject to either preelection judicial review or subject matter restrictions. As such, it is difficult to evaluate these arguments regarding the impingement of voters' free speech rights because Citizens fail to clearly articulate it.

If Citizens claim the inability to control symbolic expression using City flagpoles impacts free speech rights, we must conclude that no impingement occurred. "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." (*Pleasant Grove City v. Summum* (2009) 555 U.S. 460, 467.) By requiring that the Earth Flag

12

be flown at the top of all City-owned flagpoles, the Ordinance straightforwardly aims to control government speech. And while the goal of the Ordinance may have been to cause the government to speak for and convey the values of the City's residents, private expression is not implicated because the flags affected by the Ordinance are on public property. A First Amendment analysis does not apply.

Citizens generally state the Ordinance should be enforced because the voter initiative power must be liberally construed, and all reasonable doubts be resolved in favor of its exercise; it further asserts that a ballot measure is presumed valid and should be upheld unless it is clearly unconstitutional. In support, they cite cases such as *Legislature v. Eu* (1991) 54 Cal.3d 492 and *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220. These cases recite general principles concerning the importance of and presumptions related to the initiative power. (See, e.g., Cal. Const., art. IV, § 1 [statewide power]; art. II, §. 11 [local power].) But Citizens fail to provide persuasive analysis explaining why these cases support their position or apply to the issue of preemption.

In sum, we conclude the trial court did not err in granting the City's motion for judgment on the pleadings. To the contrary, the Ordinance was clearly preempted by section 436 as it directly contradicted section 436's provisions that the National Flag be flown in the "position of first honor."

### III. DISPOSITION

The judgment is affirmed. The City is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

13

SMILEY, J.

WE CONCUR:

HUMES, P. J.

LANGHORNE WILSON, J.

A170957
*City of Arcata v. Citizens in Support of Measure M*

14